Law Office of Hugh W. Fleischer
310 K. Street, Suite 200
Anchorage, Alaska 99501
(907) 264-6635
(907) 264-6601-Fax
hfleisch@aol.com

Raul Mendez
Mendez Law Offices
PO Box 12028
Mill Creek, Washington 98082
(206) 264-0849
raulmendez@earthlink.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO: A05-0108 CR (JWS) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ISAI HERNANDEZ ) | |
| ) | |
| Defendant. ) | |
| _____) | |

COMES NOW the defendant, Isai Hernandez, by his attorneys, Hugh W. Fleischer and Raul Mendez, and respectfully request this Court consider the following recommendation and sentencing memorandum on his behalf.

1
DEFENDANT'S SENTENCING MEMORANDUM
*(Isai A. Hernandez)*                                                -

**I. INTRODUCTION AND SENTENCING RECOMMENDATION**

Mr. Isai Hernandez respectfully request from this court to impose a sentence of no more than twenty six months if the court grants a safety valve to Mr. Hernandez and sixty months, if the Court finds him ineligible for a Safety Valve Reduction, with credit for the time he has been held in custody since on or about November 18th of, 2005, to be followed by three years of supervised release with the special conditions recommended by the Probation Department's Presentence Report.

A) Mr. Isai Hernandez qualifies for a safety valve reduction;

B) Unites States Probation Services believes that Mr. Isai Hernandez's original offense level is that of 32, with a criminal history category of I (Pre-sentence Report page 3);

C) Unites States Probation Services believes that Mr. Isai Hernandez should receive a two level increase pursuant to USSG 2S1.1(b)(2)(B), and an additional 3 level reduction for acceptance of responsibility. (Pre-sentence Report page 3).

D) Mr. Isai Hernandez objects to the finding proposed by probation in page one numbers 1. Probation stated that Hernandez was convicted of conspiracy in relation to

2

DEFENDANT'S SENTENCING MEMORANDUM
(Isai A. Hernandez)                  -

cocaine and methamphetamine, but he is not specifically charged in Counts 3-6 of the Indictment, which specifies the methamphetamine charges.   § 1-Mr. Hernandez did not plead guilty to the conspiracy and distribution of Methamphetamine as he was never involved with such substance.

E)   In addition, Mr. Hernandez makes the following objections, designated by paragraph of the Presentence Report.

§ 14-Mr. Hernandez does not recall having stipulated that the $67,000 equaled five kilograms and, further, does not recall any stipulation to add on top of the 500 grams and 308.4 grams from the house.

§ 15-Mr. Hernandez does wish to apply for the "Safety Valve" under 18 USC. § 3553(f)(1-5), as stated above.

§ 17-He should receive an adjustment as one who is a minor participant under USSG § 3B1.2 (b) for a decrease of two levels.

§ 39-This paragraph should be stricken.  The alleged molestation was fabricated by the Mother of the alleged victims and has no truth whatsoever.

3

DEFENDANT'S SENTENCING MEMORANDUM
(Isai A. Hernandez)                            -

§ 65-He wishes to make it clear that no income was reported for 2003-2006, because he did not receive the tax documents from his employer, which were necessary to report the income to the tax authorities.

§ 73-He believes with the adjustment for his minor role and the safety valve that he should receive sixty months, or less.

After the recent decision in **United States v. Booker**, 125 S.Ct. 738, (2005), the Supreme Court of the United States of America held that this court has the discretion to impose a sentence below that standard range if the court finds mitigating factors that warrant a downward departure at its sole discretion. The Court's ability to evenly, and justly apply the law, requires that this court impose the above recommended sentence. This should be done through its authority to depart from the advisory sentencing guidelines.

Factors the court may consider in imposing a sentence include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for law and to provide just

4

DEFENDANT'S SENTENCING MEMORANDUM
(Isai A. Hernandez)                              -

1   punishment for the offense, to afford adequate deterrence
2   to criminal conduct, to protect the public from further
3   crimes of the defendant; to provide the defendant with
4   needed educational or vocational training, medical care,
5   or other correctional treatment in the most effective
6   manner, the need to avoid unwarranted sentencing
7   disparities, and to provide restitution to the victims.
8   In ***United States v. Booker***, the Supreme Court held that
9   ***Blakely v. Washington***, 124, S.Ct. 2531 (2004), applied to
10  the Federal Sentencing Guidelines as "mandatory." Instead
11  of imposing the ***Blakey*** requirements of notice in an
12  indictment, proof beyond a reasonable doubt and a right to
13  a jury trial for any sentencing factors which increase the
14  guideline range, a    In ***United States v. Booker***, the
15  Supreme Court held that ***Blakely v. Washington***, 124, S.Ct.
16  2531 (2004), applied to the Federal Sentencing Guidelines
17  as "mandatory." Instead of imposing the ***Blakey***
18  requirements of notice in an indictment, proof beyond a
19  reasonable doubt and a right to a jury trial for any
20  sentencing factors which increase the guideline range, a
21  ***Booker***, at 19

22     The district court may now consider even those
23  mitigating factors that the advisory guidelines prohibit:
24  e.g., poverty, racial discrimination and humiliation, drug
25  abuse and addiction, dysfunctional family background, lack
26  of guidance as a youth, etc. ***United States v. Ameline***,

5

DEFENDANT'S SENTENCING MEMORANDUM
*(Isai A. Hernandez)*                     -

1  F.3d \_\_\_\_, 2005 WL , U.S. App. LEXTS 2032 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"). A sentence below the guidelines does not have to be justified as downward departure. After *Booker*, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for a downward departure. *U.S.v.Williams* , 2006WL68559 (11th Cir. Jan13, 2006).

This Court needs to reach a decision regarding sentencing in a post-*Booker* world. *Booker* has dramatically changed the environment, and the Sentencing Guidelines are now only one factor among many that the Court should consider. The guidelines have now been rendered advisory rather than mandatory. Thus, this brief directs its efforts at the application of several factors the court may not had used in the past.

**II. UNITED STATES V. BOOKER, S.C., 2005 WL 50108 (2005)**

In *United States v. Booker*, the Supreme Court held that *Blakely v. Washington*, 124, S.Ct. 2531 (2004), applied to the Federal Sentencing Guidelines as "mandatory." Instead of imposing the *Blakey* requirements of notice in an indictment, proof beyond a reasonable doubt and a right to a jury trial for any sentencing factors which increase the

DEFENDANT'S SENTENCING MEMORANDUM
*(Isai A. Hernandez)*                             -

1 guideline range, a different majority of the Court simply
2 excised the provision of the Sentencing Reform Act that
3 made the guidelines mandatory, 18 U.S.C. § 3553(b). This
4 remedial majority held that the district courts must still
5 consider the guideline range, 18 U.S.C. § 3553(a)(4)(5),
6 but only as one among a number of directives set forth in
7 § 3553(a).  Section 3553(a) requires the Court to "impose
8 a sentence sufficient, but not greater than necessary, to
9 comply with the purposes set forth in paragraph (2)."
10 § 3553(a)(2) states that such purposes are:

11 (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for
12 the offense;

13 (B) to afford adequate deterrence to criminal conduct; © to protect the public from further crimes of the
14 defendant; and

15 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional
16 treatment in the most effective manner

17 Section 3553(a) further directs the Court to consider (1)
18 the nature and circumstances of the offense and the
19 history and characteristics of the defendant; (3) the
20 kinds of sentences available; (6) the need to avoid
21 unwarranted sentence disparities among defendants with
22 similar records who have been found guilty of similar
23 conduct; and (7) the need to provide restitution to any
24 victims of the offense.
25     18 U.S.C. § 3661 states that "[n]o limitation shall be
26 placed on the information concerning the background,

7

character, and conduct of a person convicted of an offense which a Court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory provision was expressly endorsed in the Justice Breyer's majority decision. 2005 WL 50108 pp. 69, 71.

The requirement of § 3553 (a) that instructs the Court to "impose a sentence **sufficient but not greater than necessary** . . ." is reemphasized in Title 18 § 3582 governing imposition of sentences of imprisonment. That section specifically states:

> The Court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining **the length of the term**, shall consider the factors set forth in § 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not inappropriate means of promoting correction and rehabilitation.**

**III. APPLICATION OF THE "REASONABLENESS" STANDARD**

The ***Booker*** decision also held that any appeals from a sentence must be judged under a discretionary, highly deferential standard of "reasonableness." "Reasonableness" could not possibly mean a mandatory sentence within the advisory guidelines and unreasonable is a sentence outside the guidelines absent a previously sanctioned mitigating factor.

This argument is not what the Supreme Court intended. If the reasonableness standard is a sentence within the guideline range, then the guideline system would remain one of mandatory ranges. District judges would only be permitted to depart from the applicable range only if they could articulate exceptional reasons to justify such a departure.

**IV. APPLICATION OF BOOKER TO MR. ISAI HERNANDEZ'S CASE**

Sentencing is now a harder task for District Court judges. Judges must consider a huge range of input from both sides and hope to reach a fair sentence. Today, all we ask is for a fair sentence. A sentence that fits the illegal conduct of a desperate man addicted to drugs. We request a fair sentence under the totality of the circumstance.

On November 18th, 2005, Mr. Isai Hernandez's history of substance abuse and tragic losses culminated in his arrest and detention by Federal Agents. He was a person who has no say as to the purity or the amount transported for others. In exchange, he received money and additional drugs because he was addicted.

Mr. Isai Hernandez difficulties in life started when he was eight years old. His mother left the home and divorced his Father. (Presentence report at 6). Mr. Isai Hernandez

has indicated that he was only able to talk with his mother by telephone in the early 1990s, years after her departure has left a great void of love that has been filled by his pursuit of mood altering drugs. He indicates that he has no one to blame but himself. There is no excuse big enough that can justify the terrible crime he has committed, but it does explain many of his actions.

By age 13, Mr. Hernandez had tried alcohol, and by age 15 he developed a taste for marijuana. Starting at age 17, he started using cocaine and by 19, daily use thereof, until arrested. In addition he used the drug ecstacy, whil 18 or 19 and also used oxycontin, vicodan, perocets, mushrooms, acid and whipit. (PSR, p. 7) Needless to say, these chemicals affect the development of a child's brain. This conduct generally would affected his self control and capacity to sense dangerousness in his actions. By the time Mr. Isai Hernandez was arrested, he was consuming cocaine and other drugs worth hundreds of dollars a week.

Mr. Hernandez admits that he has a very serious problem with substance abuse, and he indicates that he wishes to attend the Bureau of Prison's 500 hour drug/alcohol treatment program and he has been attending religious services.

As this Court can see from the letters from family and

friends, he has a network of committed support for him, both will incarcerated and after release.

**A. The advisory guideline sentence is too harsh and it is greater than necessary.**

In August 9, 2003 Justice Anthony Kennedy, at the ABA Annual Meeting, stated, "Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms....[and they] should be revised downward." *US v. Ranum,* 353 F.Supp. 2d at 985

This sentiment is shared by many other judges. Comments such as:

"History shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently." *U.S. v. Antonakopoulos* 399 F.3d 68, 81 (C.A.1, 2005).

"By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh and unreasonable." *Montanye v. U.S*., 77 F.3d 226, 233 (8th Cir. 1996) (Bright, J., dissenting);

Guideline sentences "have gone awry" with sentence of 20 years for first

11

1     time meth offender and is "excessively long" and "greater
2     than necessary" and "cannot be ustified in a civilized
3     society." **United States v. Stockton,** 968 F.2d 715, 721
4     (8th Cir 1992) (Bright, Senior Judge, Concurring)
5        I personally believe, and agree with the DC Circuit,
6     that the guidelines produce such unfair and harsh results
7     because they do not account for the individual.  **United**
8     **States v. Harrington**, 947 F.2d 956, 964 (D.C. Cir. 1991)
9     (Edwards, J., concurring).  The guidelines attempt to make
10    robots out of the judiciary and take away people's
11    humanity.  Human nature, compassion, and caring can not be
12    put into an algorithm or a formula.
13       In **U.S. v. Jaber,** 362 F.Supp.2d 365 (D. Mass. 2005), the
14    court held that "the Commission simply took the average
15    national sentences for a given offense, and then increased
16    them, without explanation, much less scientific studies."
17    The court also states that in formulating the guidelines,
18    "the Commission made no effort to implement the statutory
19    purposes of sentencing."
20       According to Michael Tonry, "73.7% of district judges
21    and 82.7% of circuit judges said that federal drug-
22    trafficking sentences are inappropriately severe.  Michael
23    Tonry *The Functions of Sentencing and Sentencing Reform*"
24    58 Stanford Law Review 1, 37 n. 17 (October, 2005). U.S.

At least one court has agreed that a sentence of 46-48 months was greater than necessary to satisfy the purposes of sentencing because the defendant's children would suffer dearly. **U.S. v. Greer**, 375 F.Supp.2d 790 (E.D. Wisc., 2005).

In summary, the advisory guideline is greater than necessary, and a sentence of no more than 26 months certainly satisfies the purpose of sentencing.

**B. Downward Adjustment For Role In The Offense Is Inadequate To Show Defendant's Peripheral Involvement.**

For crimes committed after October 21 2003, the Guidelines prohibit departures based on aggravating or mitigating roles, which "may be taken into account only under" USSG 3B1. 1 and 3B1. 2.  However, this prohibition is now highly questionable in light of **Booker**.

The defense submits that for crimes committed October 27, 2003, this downward adjustment is available.  see **U.S. v. Restrepo**, 936 F.2d 661, 667 (2d Cir. 1991) (a departure may be justified where "an offense level has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense"); **U.S. v. Stuart**, 22 F.3d 76, 83-84 (3d Cir. 1994) (court may

13

1 depart where offense level overstates culpability due to
2 external circumstances, even where defendant's conduct
3 renders him ineligible for §3B1.2 adjustment); ***U.S. v.***
4 ***Alba,*** 933 F.2d 1117, 1121 (2d Cit 1991) ("though limited
5 participation in the offense is a factor taken into
6 consideration by the Sentencing Commission, a departure is
7 justified here because the defendant played only a small
8 role in the sale.").
9    In the present case, Mr. Hernandez was never charged for
10 importing the cocaine.  His involvement in the crime could
11 be characterized as one of a disposable commodity.  He was
12 nothing but a mere interim participant.  He first showed up
13 in the Probation Attachment A. in paragraph 61.  The
14 defense submits that the real test for peripheral
15 involvement should be whether or not the participant, if
16 taken away from the conspiracy, could be replaced easily.
17 Could the conspiracy survive once the participant is gone.
18  We submit that Mr. Hernandez was one of the easiest ones
19 to replace.  Carlos Rainey had been dealing drugs for many
20 months before Mr. Hernandez came into the picture.  He was
21 not an integral part.  On the other hand, Carlos Rainey was
22 integral and necessary.  Without his knowledge, resources,
23 and contacts the crime could not had been completed.
24 **B. To Enable Defendant To Be Eligible For Rehabilitative**

**Program.**

The defense submits that *Booker* now allows a court to look at the availability of rehabilitative programs. Like it has been expressed to the court, Mr. Hernandez has sought treatment. However, that is not available at his current location. This court should take into consideration the length of time required for treatment as the basis of its sentence. In *U.S. v. Duran*, 37 F.3d 557, 560- 61 & n. 3 (9th Cir. 1994), the court held that "once imprisonment is selected as the means of punishment," the court may consider "correctional treatment" and "rehabilitation" to determine the length of sentence. In this case, these considerations justified a longer sentence. Court notes that "a sentence of not less than 12 nor more than 30 months permits the court to commit a defendant to an Intensive Confinement." In addition, a sentence of 18 to 24 months allowed inmate to enter, complete, and receive "fullest possible benefit under prison drug abuse program.". Id,

**C. If this court imposes a lower sentence, the Defendant will Present Low Risk of Recidivism**

In 2004, the United States Sentencing Commission concluded, in its Fifteen Year Report to Congress, that

15

1  recidivism declines relatively consistent as age increases;
2  Defendants who have fully admitted their conduct and seek
3  rehabilitative treatment are less likely to recidivate;
4  Defendants who are sentenced to straight prison sentences
5  recidivate at a rate of 25.6 percent (that is Zone D of the
6  sentencing table); 15.1 percent of defendants who are
7  sentenced to probation recidivate; Only 16.1 percent of
8  defendants who are sentenced to a combination of
9  confinement and probation recidivate (that is Zones B and C
10  of the sentencing table). *The Criminal History Computation
11  Of The Federal Sentencing Guidelines,* at 12, 28 (2004).
12  The Commission also concluded that recidivism has a
13  consistent inverted U shape, rather than a declining slope.
14   Id, at 14.  Thus, defendants sentenced to the shortest and
15  longest sentences are the least likely to recidivate.  Id,
16  at 14.
17     The above mentioned statistics show that the conclusion
18  made by probation on page 9 number 73 is not supported by
19  the data found by the Sentencing Commission.  The
20  imposition of a 108 month sentence will not ensure the
21  safety of the United States of America or the danger of
22  recidivism by Mr. Isai Hernandez.  It will much rather make
23  Mr. Hernandez 9.5 percent more likely to recidivate.
24     The reality of the above mentioned facts have been

16

25
26

1  recognized by many courts when imposing sentence. ***U.S. v.***
2  ***Lucania,*** 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005), ***Simon v.***
3  ***U.S.***, 361 F.Supp.2d 35 (E.D.N.Y. 2005) . I***n*** *Lucania*, the
4  court noted that recidivism is markedly lower for older
5  defendants..   In ***Simon***, the court concluded, "Under the
6  Guidelines, age was not normally relevant to sentencing. §
7  5H1.1. Post-***Booker****,* however, at least one Court has noted
8  that recidivism drops substantially with age.  *See* United
9  States Sentencing Commission Report released in May, 2004)
10 (located   at   http://www.ussc.gov/publicat/Recidivism-
11 General.pdf.).
12
13 **D. Excellent Employment History.**
14 In ***U.S. v. Thompson***, 74 F.Supp.2d 69 (D.Mass. 1999), the
15 Court departed from 87 to 60 months in a drug case.  The
16 Court set out a framework for determining when employment
17 history and family ties warrant downward departure.  The
18 Court stated "not only did defendant exhibit a sustained
19 commitment to his family dating back to the instant he
20 became a father, he consistently worked to provide for
21 them.  Id..
22    In another sample case, a defendant pled guilty to
23 possession of a firearm by a prohibited person.  In that
24 case, the District Court did not abuse its discretion in
25                              17
26

1   departing downward
2   by three levels when, as one of eleven factors, it
3   considered the defendant's "long impressive work
4   history ...where good jobs are scarce." Even though under
5   §5H1.5 ordinarily a discouraged basis. **U.S. v. Jones**, 158
6   F.3d 492 (10th Cir. 1998).
7   Just as in these examples, Mr. Hernandeza has been a
8   business man.  Just as his family members state, Mr.
9   Hernandez has always worked hard.  His excellent employment
10  record should be taken into consideration.
11  **E. Minimal Role in The Offense.**
12  Minimal role as "interim participant", who was not
13  necessary for the offense conduct warrants downward
14  departure. See **U.S. v. Valdez-Gonzalez**, 957 F.2d 643 (9th
15  Cir. 1992), the court held that role in the drug play by
16  mules, not dissimilar to Hernandez's role, may constitute a
17  mitigating circumstance of a kind or degree not considered
18  guidelines warranting downward departure.
19
20  **V. CONCLUSION**
21  The sentence decision for Mr. Isai Hernandez is a
22  difficult one.  He has never found himself charged with a
23  crime.  He is addicted to alcohol, cocaine, and other drugs
24  and he wishes to receive treatment.  It appears that this
25
26

is the most amount of time he has been sober in his adult life.  He has expressed remorse, and wishes to lead a lawful and productive life. This Court must impose a sentence that is sufficient, but not greater than necessary to meet the goals of sentencing in Mr. Hernandez's case. Under that approach, considering all of the factors, the sentence we recommend is fair.  That is all Mr. Hernandez wants and needs, a fair sentence.

DATED this 13th day of September, 2006.

_____
LAW OFFICES OF HUGH W. FLEISCHER

9497/519

By:__S/Hugh W. Fleischer_____
    Hugh W. Fleischer
    AK Bar # 7106012
    Law Offices of Hugh W. Fleischer
    310 K. Street, Suite 200
    Anchorage, AK 99501
    (907) 264-6635
    (907) 264-6602 (fax)
    hfleisch@aol.com


By:   S/ Raul Mendez
      Raul Mendez
      Mendez Law Offices
      PO Box 12028

19

Mill Creek, Washington 98082
(206) 264-0849
raulmendez@earthlink.net

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 13th day of September, 2006, a true copy of the foregoing was electronically filed with the following counsel:

Stephan Collins
Assistant U.S. Attorney
222 W. 7th Ave., # 9, Rm. 253
Anchorage, AK 99513-7567

Herman G. Walker
606 E. St., Ste. 203
Anchorage, AK 99501

D. Scott Dattan
2600 Denali St., Ste. 460
Anchorage, AK 99503

Burke Wonnell
2600 Denali St., Ste. 460
Anchorage, AK 99503

Mark A. Rosenbaum
4940 Byrd Lane, Ste. 100
Anchorage, AK 99502

Michael D. Dieni, Asst. FDP
550 W. 7th Ave., Ste. 1600
Anchorage, AK 99501

Lance C. Wells
733 W. 4th Ave., Ste. 308
Anchorage, AK 99501

Raul Mendez
PO Box 12028
Mill Creek, WA 98082

  <u>S/ Hugh W. Fleischer</u>
  Law Offices of Hugh W. Fleischer